| | | |
|---|---|---|
| AMERICAN ACCESSORIES INTERNATIONAL, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:15-CV-49-TAV-HBG |
| CONOPCO, INC. d/b/a UNILEVER, and UNILEVER UNITED STATES, INC., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil matter is before the Court on the motion to dismiss filed by defendants Conopco, Inc. d/b/a Unilever and Unilever United States, Inc. (collectively "Unilever") [Doc. 10]. Plaintiff filed a response [Doc. 16], and defendants replied [Doc. 17]. After careful consideration of the complaint and the relevant law, the Court will grant defendants' motion to dismiss plaintiff's complaint and will dismiss this case.

**I.    Background[1]**

Defendants manufacture and sell a variety of branded personal care products sold under trademarks including: Axe, Caress, Dove, Suave, and Vaseline, among others [Doc. 9 ¶ 6]. Defendants have a gifting program, whereby, it combines certain products into packages sold by various national retailers in conjunction with holidays and other

---

[1] For the purposes of the motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

special occasions [*Id.* ¶ 7]. Defendants do not design any of these gift packages; rather defendants rely on vendors, such as plaintiff, for the designs [*Id.* ¶ 8].

Since at least 2002, plaintiff has designed gift packages used in defendants' gifting program [*Id.* ¶ 9]. Plaintiff asserts that since 2010, plaintiff has designed the majority of the gift packages used in defendant's gifting program in the United States [*Id.*].

In support of the gifting program, at defendants' request, plaintiff spends considerable time, effort, and expense designing brand-specific gift packages that would appeal to the unique profiles of the consumers [*Id.* ¶ 12]. Plaintiff performs sophisticated market research and demographic analysis on behalf of defendants [*Id.* ¶ 13].

Each year since 2010, defendants have requested that plaintiff prepare for and participate in a "gifting summit," at which plaintiff, and a number of other invited vendors, present prototypes for gift packages [*Id.* ¶ 16]. During these summits, plaintiff presented its prototypes and associated media separately from other invited vendors [*Id.* ¶ 17]. Plaintiff contends that it was understood by the parties that the prototypes and associated media remained plaintiff's property and would not be shared with other vendors or otherwise used by defendant without further agreement between the parties [*Id.*].

This gifting program was cyclical and time-sensitive [*Id.* ¶ 20]. According to plaintiff, defendants expected, requested, and depended on plaintiff to performing its product design services in sufficient time to be prepared to present the large quantity of gift package designs required for consideration at the annual gifting summits [*Id.*].

2

Plaintiff asserts that it performed the requested services in exchange for defendants' promise that plaintiff would be allowed to participate in the gifting summit without precondition [*Id.*]. According to plaintiff, this agreement is memorialized in the parties' course of dealing and frequent communications—all of which commenced long before defendants sent out the formal instructions about the annual gifting summits [*Id.*].

According to plaintiff, over the years a course of conduct developed between the parties [*Id.* ¶ 19]. The parties followed the same course of dealing for the 2011, 2012, and 2013 gifting summits [*Id.* ¶ 21–23]. In these years, through oral and written communications that were subsequently memorialized in a formal written brief, defendants requested that plaintiff prepare, and plaintiff at great expense prepared, multiple gift package designs for the season [*Id.*]. Plaintiff would then disclose its gift package designs to defendants with the associated media [*Id.*]. Defendant would select several designs for use in the gifting program [*Id.*]. Finally, pursuant to further agreement between the parties, plaintiff manufactured the gift packages based on its designs, which allowed plaintiff to recoup its related development costs [*Id.*].

In 2013, Esteban Messuti assumed the role of defendants' Manager of Indirect Procurement, Marketing & Sales, and this role gave him final decision-making authority over defendants' gifting program [*Id.* ¶ 24].

In or about March 2013, and separate and apart from the 2014 holiday gifting season programing, defendants requested that plaintiff develop various product designs for a Suave Holiday comb project [*Id.* ¶ 26]. Defendants selected various product designs

3

[*Id.*]. In this case, however, defendants sourced the manufacturing to a third party contrary to their usual course of dealing [*Id.*]. Plaintiff alleges that it is apparent that plaintiff's proprietary product design media was communicated to the manufacturer in order to facilitate the manufacture of the selected design [*Id.*].

After this incident, plaintiff advised Mr. Messuti of the course of dealing that had previously developed between the parties, and pointed out that plaintiff could only recoup its development costs through the ultimate sale of the product to defendants [*Id.* ¶ 27].

On March 12, 2013, the parties met to discuss preparations for the 2014 holiday gifting season [*Id.* ¶ 25]. Plaintiff alleges that shortly before June 5, 2013, Mr. Messuti communicated to Karishma Romero, an employee of Unilever, of his intent to change the terms of the agreement between the parties [*Id.* ¶ 28]. He intended to require that plaintiff transfer all intellectual property associated with plaintiff's market research and gift packaging designs as a condition of participating in the upcoming gifting summit [*Id.*]. Ms. Romero, however, protested that it was too late to change the terms of the 2015 gifting summit [*Id.*]. Plaintiff contends that Mr. Messuti did not abandon his plan to change the terms of the agreement for the 2015 gifting summit, but instead, he concealed the plan [*Id.* ¶ 30]. .

The 2014 gifting summit commenced on June 5, 2013, and followed the same course of dealing as the summits in 2011, 2012, and 2013 [*Id.* ¶ 21–23, 29].

In the fall of 2013, defendants requested that plaintiffs prepare for the 2015 gifting program and did not disclose Mr. Messuti's plan [*Id.* ¶ 31]. Plaintiff began performing

4

trend and demographics analysis, market research, and product design services [*Id.* ¶ 33]. In October 2013, Jennifer Bergdoch, an employee of Unilever, told plaintiff that Mr. Messuti had a full understanding of plaintiff's development costs associated with the gifting program [*Id.* ¶ 34].

On or about March 21, 2014, defendants communicated more details about the expectations for plaintiff's services in support of the 2015 gifting program [*Id.* ¶ 36]. Defendants did not inform plaintiff at this point of any condition requiring plaintiff to transfer its intellectual property [*Id.*]. Plaintiff, therefore, continued to prepare for the gifting summit [*Id.*].

In July 2014, after plaintiff had expended over $500,000 in product design and development services, defendants—acting through Mr. Messuti—asked plaintiff to agree to assign its intellectual property relating to the work done for Unilever, including the media disclosing product designs, to Unilever as a condition of participating in the 2015 gifting summit [*Id.* ¶ 38]. Plaintiff contends that this new condition would have left Mr. Messuti free to take plaintiff's development work to other vendors or manufactures for bid without payment to plaintiff for the work product—leaving no way for plaintiff to recoup its development costs [*Id.* ¶ 39]. Plaintiff refused to assign its intellectual property rights to defendants and, consequently, defendants refused to allow plaintiff to present at the gifting summit [*Id.* ¶ 40].

According to plaintiff, the terms of the agreement between the parties, as established through various writings and a lengthy course of dealing, did not require an

5

assignment of plaintiff's intellectual property rights as a condition of presenting at the gifting summit [*Id.* ¶ 42]. Plaintiff alleges that it would not have undertaken the market analysis and product development requested by defendants if it had been advised that defendants intended to require assignment of plaintiff's intellectual property as a condition of participating in the summit [*Id.* ¶ 43].

Plaintiff asserts that the parties entered into a valid contract for services, whereby plaintiff provided defendants with trend analysis, market research, material designs, package designs, gift product designs, and related product services in support of defendants' 2015 gifting program [*Id.* ¶ 45]. In exchange, defendant agreed to provide plaintiff with the opportunity to present its research and designs at the gifting summit without any preconditions, including any requirement to assign over intellectual property rights [*Id.*].

Plaintiff filed a complaint to commence this action against defendants [*Id.* ¶ 1]. Plaintiff alleges the following claims: (1) breach of contract, (2) promissory estoppel, (3) promissory fraud, (4) negligent misrepresentation, and (5) fraudulent concealment [*Id.* ¶¶ 1, 44–76]. Defendants filed a motion to dismiss all of plaintiff's claims [Doc. 10].

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it

rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be stated with particularity. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993). The rule is meant to ensure that the complaint provides sufficient notice of the alleged misrepresentation, "allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *Id.* at 862 (alteration in original) (quoting *Brewer v.*

7

*Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)). Therefore, the rule requires "a plaintiff, at a minimum, to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Id.* at 161–62 (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). Additionally, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* at 162 (internal quotation marks omitted) (quoting *Ballan*, 814 F. Supp. at 1385). The pleading requirements of Rule 9(b) should be read in harmony with those of Rule 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

### III. Breach of Contract

Plaintiff alleges that there was a valid contract for services between plaintiff and defendants, and that defendants breached that contract. To establish a breach of contract, plaintiff must show: "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Daly v. Wacker-Chemie AG*, No. 1:13-cv-382, 2014 WL 3810595, at *11 (E.D. Tenn. Aug. 1, 2014) (internal quotation marks omitted) (quoting *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011)).

"Tennessee has adopted the view of the Restatement (Second) of Contracts, which distinguishes preliminary negotiations and discussions from mutual assent." *McKee v. Metltech, Inc.*, No. 10-2730, 2011 WL 1770461, at *8 (W.D. Tenn. May 9, 2011) (citing

*Jamestown on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 566 (Tenn. Ct. App. 1990)). There is no valid contract in Tennessee if the parties contemplate another step before establishing contractual arrangements, or if some elements of the agreement are left for future arrangement. *Id.* at *7 (citations omitted). Additionally, "advertisements and solicitations are generally considered invitations to make offers, not offers that may be accepted and form a binding contract." *Id.* at *8 (citations omitted); *see also* Restatement (Second) of Contracts § 26 cmt. d (noting that "a request for bids" generally "indicate[s] that no offer is being made").

Plaintiff contends that the parties had an enforceable contract for services[2] and that they reached mutual assent through their course of dealing. In particular, plaintiff asserts that it agreed to perform market research and design services and, in return, defendants agreed to allow plaintiff to participate in the 2015 gifting summit without precondition.

Defendant argues that the gifting summit was a preliminary invitation to submit designs, and such an invitation does not rise to the level of an enforceable contract. The Court agrees.

In *Angus v. City of Jackson*, 968 S.W.2d 804 (Tenn. Ct. App. 1997), the Tennessee Court of Appeals rejected the contention that the parties' history of solicitation and presentation of bids constituted an enforceable contract. *Id.* at 808. The plaintiff alleged

---

[2] Defendant argues that plaintiff is alleging a contract for goods, and thus this claim is barred by the statute of frauds [Doc. 11 p. 9–10]. However, plaintiff's allegations in the complaint and plaintiff's arguments in briefings demonstrate that plaintiff is only asserting a contract for services [Docs. 9, 16]. Thus the Court will treat the claim as a breach of contract for services.

9

that the defendant had a practice of sending the plaintiff invitations to bid on demolition projects for over twenty years and that the course of dealing formed the basis of an implied contract. *Id.* at 806–08. The defendant would invite the plaintiff to bid, the plaintiff would prepare bids, and the defendant would, on occasion, accept them. *Id.* The plaintiff alleged that the defendant's failure to invite him to bid on certain demolition projects breached the implied contract. *Id.* However, the Tennessee Court of Appeals rejected this theory holding that "[no] contract between the parties existed until Angus submitted a bid on a project which was accepted by the city." *Id.* at 808.

Plaintiff's allegations in this case are analogous to the allegations in *Angus*. Plaintiff alleges that since 2010, defendants invited plaintiff to participate in a gifting summit, along with other invited vendors, to present prototypes for gift packages. Over the years, plaintiff alleges that a course of conduct developed whereby plaintiff would design and present prototypes, and defendant would select certain designs. Finally, defendant would issue manufacturing and supply orders for the selected gift packages. Given the similarity between this case and *Angus*, Tennessee law would support the contention that there is no contract here.

Plaintiff, however, asserts that this case is distinguishable from *Angus* because the gifting summit was not a preliminary invitation to submit designs, but it was a "distinct event with independent significance to both parties" [Doc. 16 p. 9]. Plaintiff submits that preparation for the summit required market research, trend analysis, and design services. Generally speaking though, it is axiomatic that submitting a bid can be a time-consuming

10

and expensive process, and may involve independent research and development. Submitting a bid, therefore, can be "independently significant" to the parties involved. Yet, plaintiff does not provide support for the proposition that this "independent significance" can create a separate contractual relationship between the parties prior to the acceptance of one of plaintiff's designs.

Additionally, the Court finds that the contours of the alleged contract are uncertain. It is unclear if plaintiff would contend that defendants breached the alleged contract if defendants invited plaintiff to the summit without precondition but did not select any of plaintiff's designs. It is also questionable whether plaintiff would be in breach if defendant invited plaintiff to the summit without precondition and plaintiff chose not to attend.

The Court finds, therefore, that plaintiff has not sufficiently pled the existence of an enforceable contract. Consequently, the Court will dismiss the breach of contract claim.

## IV. Promissory Estoppel

Plaintiff also brings a promissory estoppel claim. "[P]romissory estoppel is available when a defendant makes a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." *Daly*, 2014 WL 3810595, at *15 (internal quotation marks omitted) (citing *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982)). Plaintiff must show: "(1) that a promise was made; (2) that the promise was unambiguous

and not unenforceably vague; and (3) that [it] reasonably relied upon the promise to [its] detriment." *Id.* (internal quotation marks omitted) (citing *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 399–400 (Tenn. Ct. App. 2007)).

Plaintiff asserts that defendants unambiguously promised, through their words and actions, including the parties' course of dealing established throughout the years, that plaintiff would have the opportunity to participate in the 2015 gifting summit without precondition. In the complaint, plaintiff details a history of plaintiff rendering design services and defendant inviting plaintiff to participate in the gifting summit without precondition [Doc. 9 ¶ ¶ 12–13, 16–17, 20–23, 29]. Plaintiff relies only on this course of dealing, and does not allege an instance where defendants specifically promised plaintiff that the same conditions would apply to the 2015 gifting summit as applied to the previous ones.

The only authority plaintiff provides for the proposition that an implied promise based on a course of dealing can support a claim for promissory estoppel is *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480 (Tenn. Ct. App. 1991). While the court in *Amacher* did not expressly criticize the plaintiff's reliance on the parties' course of dealing in alleging the promise, the court did not find that course of dealing is a valid mechanism for alleging a promise in a promissory estoppel claim. *Id.* at 482–83. Instead, the court dismissed the claim because the alleged promise lacked essential terms, and consequently, found that it was ambiguous and unenforceable. *Id.* A court's decision to rely on only one deficient element of an alleged claim as the cause for

12

dismissal does not mean that the court found that the plaintiff sufficiently alleged the remaining elements. Plaintiff does not provide any other authority affirmatively stating that an implied promise based on a course of dealing can support a claim for promissory estoppel.

Further, plaintiff does not address the fact that the course of dealing between the parties changed before the 2015 gifting summit. In 2013, Esteban Messuti assumed the role of defendants' Manager of Indirect Procurement, Marketing & Sales, and assumed final decision-making authority over the gifting program [Doc. 9 ¶ 24]. Plaintiff alleges that in or about March 2013, on an occasion separate from the gifting program, defendants sourced the manufacturing of one of plaintiff's designs to a third party, which was contrary to the parties' alleged typical course of dealing [*Id.* ¶ 26]. Plaintiff is of the opinion that plaintiff's proprietary product design was communicated to the manufacturer in that instance [*Id.*]. Plaintiff then advised Mr. Messuti of the previous course of dealing between the parties [*Id.* ¶ 27]. Plaintiff does not allege, however, that Mr. Messuti informed plaintiff that he accepted the terms established by the previous course of dealing.

To the extent that defendant made an implied promise to plaintiff through course of dealing, that implied promise was not "unambiguous and not unenforceably vague" once Mr. Messuti took charge and previously demonstrated at least some intention to source manufacturing and release product design media. Although this circumstance was not related to a gifting summit specifically, plaintiff was communicating with the same

13

parties, and still developed various design products at considerable expense. This circumstance, therefore, is related to the overall course of dealing between the parties. Further, after defendants acted contrary to their usual course of business in March of 2013, plaintiff received no assurance from Mr. Messuti, or from anyone else at Unilever, that they would not do the same thing for the 2015 gifting summit.

The Court finds, assuming all allegations as true, that defendants did not make a promise. Even if the alleged course of dealing is sufficient to constitute a promise, the Court finds that the promise is ambiguous and unenforceably vague. The Court will, therefore, dismiss plaintiff's promissory estoppel claim.

## V. Promissory Fraud

Plaintiff asserts a claim for promissory fraud. To state a claim for promissory fraud, plaintiff must sufficiently plead: "(1) a promise of future conduct; (2) that was material; (3) made with the intent not to perform; (4) that plaintiff reasonably relied upon; (5) to plaintiff's injury." *Monaco Indus., LLC v. Shopper Local, LLC*, No. 3:13-CV-660, 2014 WL 4678283, at *6 (E.D. Tenn. Sept. 18, 2014) (citing *Noblim v. Christiansen*, No. M2005-01316-COA-R3-CV, 2007 WL 1574273, at *8–9 (Tenn. Ct. App. 2007)).

As discussed in the previous section, plaintiff has not sufficiently pled that defendants made any promise of future conduct. Consequently, plaintiff has not sufficiently pled its promissory estoppel claim.

14

## VI. Negligent Misrepresentation[3]

In order to establish a claim for negligent misrepresentation, plaintiff must show that: (1) defendants were acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary interest; (2) defendants supplied faulty information meant to guide others in their business transactions; (3) defendants failed to exercise reasonable care in obtaining or communicating the information; and (4) plaintiff justifiably relied on the information. *Thompson v. Bank of Am.*, 773 F.3d 741, 752 (6th Cir. 2014) (citing *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997)).

"A negligent misrepresentation claim must consist of a statement of a material past or present fact." *Gardner v. Anesthesia & Pain Consultants, P.C.*, No. E2003-03027-COA-R3-CV, 2004 WL 2715304, at *6 (Tenn. Ct. App. Nov. 30, 2006) (citation and internal quotation marks omitted); *see also Freightliner of Knoxville, Inc. v. DaimlerCrysler Vans, LLC*, 438 F. Supp. 2d 869, 887 (E.D. Tenn. 2006) ("[A]n actionable misrepresentation must consist of a material past or present fact and cannot be based on opinion or conjecture as to future events."). "The tort of negligent misrepresentation cannot be based on conjecture, statements of opinion, puffing and sales talk, or representations of future events." *Gardner*, 2004 WL 2715304, at *6 (citation omitted). Representations regarding future events can still support a claim for negligent misrepresentation if the representations concern existing agreements and the

---

[3] The parties are in dispute as to whether negligent misrepresentation requires the plaintiff to plead with particularity as required by the heightened pleading standard in Rule 9(b). The Court finds that the negligent misrepresentation claim fails under both the Rule 9(b) and the Rule 8 standard. Therefore, the Court declines to rule as to which standard applies.

15

representations involve a present or past fact. *See Cummins v. Opryland Prods.*, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *8–10 (Tenn. Ct. App. Mar. 7, 2001) (determining that the plaintiff had a viable claim for negligent misrepresentation when the alleged statements concerned committed funds to a deal that involved future events).

Plaintiff alleges that defendants "negligently communicated to [plaintiff] that the 2015 gifting program was being run the same way it had been in years past, without notifying [plaintiff] of the new condition" [Doc. 9 ¶ 65]. In support of this claim, plaintiff cites to conversations that occurred around September 9, 2013, October 2, 2013, and December 6, 2013 [*Id.*]. However, when plaintiff expands on the detail of these communications, plaintiff does not allege any statement in which defendants affirmatively stated their intention to run the gifting program the same away it had in years past [*See id.* ¶¶ 32, 34]. Rather, plaintiff relies on defendants' omission, that is, defendants' failure to state there would be a new condition. Plaintiff does not provide any support for the contention that this type of omission can be the basis of a negligent misrepresentation claim.

Further, any alleged representation that defendants made to plaintiff referred to a future event, that is, defendants allegedly represented that a new condition would not apply to the 2015 gifting summit. *See Gardner*, 2004 WL 2715304, at *4–7 (assurances that an employee will have a valid two-year contract within a short period of time did not constitute a representation of an existing fact and consequently could not be the basis for a negligent misrepresentation claim); *Henley v. Labat-Anderson, Inc.*, No. 03A01-9104-

16

CV-126, 1991 WL 120403 (Tenn. Ct. App. July 9, 1991) (assurances to the plaintiff by the employer that the plaintiff would be hired in the future were not considered representations regarding existing facts).

The Court finds that any alleged representation on the part of defendants regarding the conditions for participating in a future event do not constitute a statement of a material past or present fact. Accordingly, plaintiff has not sufficiently pled its negligent misrepresentation claim.

## VII. Fraudulent Concealment

Plaintiff also alleges a claim for fraudulent concealment. The elements of fraudulent concealment are a matter of dispute between the parties. The parties disagree as to whether fraudulent concealment requires plaintiff to prove the existence of a fiduciary relationship [Doc. 11 p. 29–30; Doc. 16 p. 23–25; Doc. 17 p. 14–17]. Plaintiff argues that that there is no requirement under Tennessee law that there is a confidential or fiduciary relationship between the parties, rather that defendants engaged in fraudulent concealment by violating a broader duty of candor in contracting [Doc. 16 p. 23–25]. Even if the Court accepts plaintiff's construction of the elements, plaintiff has not adequately alleged a claim for fraudulent concealment.

Plaintiff relies on defendants' mere silence as the basis for the fraudulent concealment claim. "[E]ven where the parties have had business transactions, it is universally held that mere silence does not constitute concealment." *Saltire Indus. Inc. v.*

17

*Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007) (citing *Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933). There must be a concealment consisting of "withholding information asked or, or in making use of some device to mislead, thus involving act and intention," or more generally, the term concealment infers that the "the person is in some way called upon to make a disclosure." *Id.* at 528 (emphasis omitted). Plaintiff has not alleged any such facts here.

Additionally, even if the Court takes as true plaintiff's contention that a duty of candor is sufficient for a valid claim of fraudulent concealment, plaintiff has not provided support that a duty of candor applies in this case. "[E]ach party to a contract is bound to disclose to the other all he may know respecting the subject matter materially affecting a correct view of it." *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947) (citation omitted). Plaintiff contends that defendants "had a duty to disclose [the new condition] prior to [plaintiff] performing its research, design, and development work in preparation for the 2015 gifting summit" [Doc. 9 ¶ 19].

Plaintiff urges the Court to follow the same analysis it did in *Myers v. Peoples Bank of Ewing*, No. 3:11-CV-380, 2012 WL3288179 (E.D. Tenn. Aug. 10, 2012). *Myers* involved a fraudulent concealment claim where father and son debtors sued a bank alleging that the bank failed to explain loan documentation, refused to provide copies of loan documents, and failed to notarize documents in their presence. *Id.* at *5. In *Myers*, this Court noted that the law on fraudulent concealment is "somewhat unsettled" as to

18

whether the claim requires a "duty to disclose or fiduciary relationship." *Id.* "In the absence of further briefing and development of the record through discovery," this Court ultimately denied a motion to dismiss as to the fraudulent concealment claim. *Id.*

Notably however, in both *Myers* and *Simmons*, the two cases plaintiff primarily relies upon, the fraudulent concealment claims involved an underlying agreement. *Id.* at *2–3; *Simmons*, 206 S.W.2d at 284–86. Therefore, the duty of candor discussed in *Simmons* would naturally follow in both cases. However, in this case, the Court finds that there are insufficient allegations of a valid contract between the parties. Even if the Court takes as true plaintiff's contention that a duty of candor is sufficient for plaintiff to have a valid claim of fraudulent concealment, plaintiff provides no support for the proposition that the *Myers* and *Simmons* framework should apply where the Court does not find a sufficiently alleged agreement between the parties. Plaintiff has therefore failed to allege that there was any duty of candor, or more generally, that defendants had any duty to disclose at any particular time that the procedures for the 2015 gifting summit had changed.

The Court, therefore, finds that plaintiff has not sufficiently pled a claim for fraudulent concealment because plaintiff is relying on mere silence for the basis of its claim and plaintiff has not sufficiently pled that defendants had a duty to disclose.

## VIII. Conclusion

For the reasons set forth herein, defendants' motion to dismiss plaintiff's complaint [Doc. 10] is hereby **GRANTED**, and all claims against all defendants will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE