UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| AMERICAN ACCESSORIES, | ) | |
| INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:15-CV-49-TAV-HBG |
| | ) | |
| CONOPCO, INC., | ) | |
| d/b/a UNILEVER, and | ) | |
| UNILEVER UNITED STATES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on plaintiff's Motion to Alter or Amend
Judgment [Doc. 30], and plaintiff's Motion for Leave to Amend Pleadings [Doc. 32].
The parties filed responses and replies to the pending motions [Docs. 34–37].  Plaintiff
moves the Court under Federal Rule of Civil Procedure 59(e) to reconsider or vacate its
February 17, 2016, Memorandum Opinion and Order [Docs. 28, 29] granting defendants'
Motion to Dismiss [Doc. 10] and dismissing this action in its entirety.  In the event that
the Court vacates the judgment, plaintiff moves the Court for leave to amend the
complaint.  For the reasons discussed herein, the Court will deny plaintiff's Motion to
Alter or Amend Judgment [Doc. 30], and will deny as moot plaintiff's Motion for Leave
to Amend Pleadings [Doc. 32].

# I.    Background[1]

Defendants manufacture and sell a variety of branded personal care products sold under trademarks [Doc. 9 ¶ 6].  They have a gifting program, whereby, they combine certain products into packages sold by various national retailers in conjunction with holidays and other special occasions [*Id.* ¶ 7].  Since at least 2002, plaintiff has designed gift packages used in defendants' gifting program [*Id.* ¶ 9].

Each year since 2010, defendants have requested that plaintiff prepare for and participate in a "gifting summit," at which plaintiff, and a number of other invited vendors, present prototypes and associated media for gift packages [*Id.* ¶ 16].  In preparation for the summit, plaintiff would spend considerable time, effort, and expense designing brand-specific gift packages that would appeal to consumers [*Id.* ¶ 12].  As part of this preparation, plaintiff would perform market research and demographic analysis [*Id.* ¶ 13].

According to plaintiff, over the years a course of conduct developed between the parties [*Id.* ¶ 19].  The parties followed the same course of dealing for the 2011, 2012, and 2013 gifting summits [*Id.* ¶¶ 21–23].  In these years, through oral and written communications that were subsequently memorialized in a formal written brief,

---

[1] Although the Court discusses certain facts relevant to the Court's analysis, the Court presumes familiarity with the facts of this case as well as the analysis underlying the Court's Memorandum Opinion and accompanying Order issued on February 17, 2016 [Docs. 28, 29].

As plaintiff seeks reconsideration of the Court's granting of a motion to dismiss, the Court takes plaintiff's factual allegations as true for the purposes of this opinion.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

defendants requested that plaintiff prepare multiple gift package designs for the season [*Id.*]. Plaintiff would then disclose its gift package designs to defendants with the associated media [*Id.*]. Defendant would then select several designs for use in the gifting program [*Id.*]. Finally, pursuant to further agreement between the parties, plaintiff manufactured the gift packages based on its designs, which allowed plaintiff to recoup its related development costs [*Id.*].

In 2013, Esteban Messuti assumed the role of defendants' Manager of Indirect Procurement, Marketing & Sales, a role which gave him final decision-making authority over defendants' gifting program [*Id.* ¶ 24].

In or around March 2013, separate from the 2014 holiday gifting season programing, defendants requested that plaintiff develop various product designs for a SUAVE® holiday comb project [*Id.* ¶ 26]. Defendants selected various product designs [*Id.*]. In this circumstance, contrary to their usual practice, defendants sourced the manufacturing to a third party [*Id.*]. Plaintiff alleges that it is apparent that its proprietary product design media was communicated to the third-party manufacturer in order to facilitate the manufacture of the selected design [*Id.*]. After this incident, plaintiff advised Messuti of the course of dealing that had previously developed between the parties, under which plaintiff manufactured the products, and pointed out that plaintiff could only recoup its development costs through the ultimate sale of the product to defendants [*Id.* ¶ 27].

The 2014 gifting summit was scheduled for June 5, 2013 [*Id.* ¶ 29]. Shortly before that day, Messuti communicated to Karishma Romero, another employee of defendants, of his intent to change the terms of the agreement between the parties [*Id.* ¶ 28]. According to plaintiff, he intended to require that plaintiff transfer all intellectual property associated with plaintiff's market research and gift packaging designs as a condition of participating in the upcoming gifting summit [*Id.*]. Romero, however, protested that it was too late to change the terms of the upcoming 2014 gifting summit [*Id.*]. Subsequently, the 2014 gifting summit commenced on June 5, 2013, and followed the same course of dealing as the summits in 2011, 2012, and 2013 [*Id.* ¶¶ 21–23, 29].

Plaintiff contends that Messuti did not abandon his plans to change the terms of the agreement between the parties [*Id.* ¶ 30]. In the autumn of 2013, defendants requested that plaintiff prepare for the 2015 gifting program without disclosing Messuti's plan to change the agreement [*Id.* ¶ 32]. In preparation for the summit, plaintiff began performing trend and demographics analysis, market research, and product design services [*Id.* ¶ 33]. On October 2, 2013, Jennifer Bergdoch, an employee of defendants, told plaintiff that Messuti had a full understanding of plaintiff's development costs associated with the gifting program [*Id.* ¶ 34].

In January 2014, defendants advised plaintiff that plaintiff would no longer make its sale of selected gift packages directly to defendants, but that it would henceforth sell the packages to Menasha, a buying entity affiliated with defendants [*Id.* ¶ 35]. Plaintiff

4

believed that this change would only affect the end purchaser of the gift packages and no other changes to the alleged agreement were communicated to plaintiff [*Id.*].

On or about March 21, 2014, defendants formally outlined their expectations for plaintiff's services in support of the 2015 gifting program [*Id.* ¶ 36]. Defendants did not inform plaintiff at this point of any condition requiring plaintiff to transfer its intellectual property [*Id.*].

In July 2014, after plaintiff had expended over $500,000 in product design and development services, defendants—acting through Messuti—required that plaintiff assign its intellectual property relating to the work done for defendants, including the media disclosing product designs, to defendants as a condition of participating in the 2015 gifting summit [*Id.* ¶ 38]. Plaintiff refused to do so and, consequently, defendants refused to allow plaintiff to present at the gifting summit [*Id.* ¶ 40].

According to plaintiff, the terms of the agreement between the parties, as established through various writings and a lengthy course of dealing, did not require an assignment of plaintiff's intellectual property rights as a condition of presenting at the gifting summit [*Id.* ¶ 42].

Plaintiff's amended complaint alleges the following claims: (1) breach of contract, (2) promissory estoppel, (3) promissory fraud, (4) negligent misrepresentation, and (5) fraudulent concealment [Doc. 9 ¶¶ 1, 44–76]. Defendants filed a motion to dismiss all of plaintiff's claims for failing to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 10]. On February 17, 2016, the Court

issued a Memorandum Opinion [Doc. 28] and Order [Doc. 29] granting defendants' motion to dismiss in its entirety and dismissing the case. Plaintiff then filed a Motion to Alter or Amend Judgment [Doc. 30] seeking reconsideration of the Court's February 17, 2016, Memorandum Opinion [Doc. 28], and Order [Doc. 29]. In the alternative, plaintiff asks the Court to vacate the judgment to allow plaintiff leave to file a second amended complaint. Should the Court choose to vacate the judgment, plaintiff also filed a Motion for Leave to Amend Pleadings [Doc. 32]. The Court will first address the Motion to Alter or Amend Judgment [Doc. 30] and then turn to the Motion for Leave to Amend Pleadings [Doc. 32].

## II.    Motion to Alter or Amend Judgment

Plaintiff moves the Court to alter or amend the judgment in this case pursuant to Federal Rule of Civil Procedure 59(e). "A district court may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Rule 59 motions "are not intended as a vehicle to relitigate previously considered issues . . . and are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." *Kenneth Henes Special Projects Procurement v. Cont'l Biomass Indus., Inc.*, 86 F. Supp. 2d 721, 726 (E.D. Mich. 2000) (emphasis and citation omitted); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367,

6

374 (6th Cir. 1998) (noting that a Rule 59(e) motion "is not an opportunity to re-argue a case" nor an avenue to raise arguments that "could have, but [were] not" raised before); *Beltowski v. Bradshaw*, No. 1:08 CV 2651, 2009 WL 5205368, at *4 (N.D. Ohio Dec. 23, 2009) ("The motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple.").

"The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court." *Constr. Helicopters, Inc. v. Heli-Dyne Sys., Inc.*, Nos. 88-1166, 88-1192, 1989 WL 54111, at *4 (6th Cir. May 23, 1989) (citations omitted)). The narrow aims of Rule 59(e) focus on empowering district courts to rectify their own mistakes immediately following the entry of judgment. *See United States v. Willyard*, No. 3:07-CR-44, 2008 WL 471683, at *2 (E.D. Tenn. Feb. 19, 2008) (citations omitted). The moving party must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *McDaniel v. Am. Gen. Fin. Servs.*, No. 04-2667 B, 2007 WL 2084277, at *2 (W.D. Tenn. July 17, 2007).

Here, plaintiff argues that the Court should alter or amend its judgment in order to correct clear errors of law and to prevent manifest injustice. The Court will address each of these arguments in turn.

## A.    Clear Error

Plaintiff asserts that the Court erred in granting defendants' motion to dismiss by incorrectly applying the standard for ruling on motions pursuant to Federal Rule of Civil Procedure 12(b)(6). When analyzing a Rule 12(b)(6) motion, the Court must accept all

factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court notes that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to make such a determination, the Court must "draw on its judicial experience and common sense." *Id.* at 679. Although detailed factual allegations are not required, a plaintiff does not state a claim for relief by relying on "labels and conclusions." *Twombly*, 550 U.S. at 570.

Plaintiff contends that the Court did not consider all allegations in the complaint and did not draw all inferences in the light most favorable to plaintiff when analyzing each of plaintiff's claims. The Court will first analyze plaintiff's breach of contract and fraudulent concealment claims. Next, the Court will turn to plaintiff's promissory estoppel and promissory fraud claims. Finally, the Court will address plaintiff's negligent misrepresentation claim.

### 1. Breach of Contract and Fraudulent Concealment Claims

In its February 17, 2016, Memorandum Opinion, the Court found that plaintiff had not sufficiently alleged the existence of an enforceable contract and dismissed plaintiff's breach of contract and fraudulent concealment claims on that basis [Doc. 28 pp. 8–11,

17–19; Doc. 29]. Plaintiff seeks reconsideration of that finding for several reasons. First, plaintiff argues that the Court drew an improper inference in favor of defendants when it determined that defendants had merely extended a preliminary invitation to plaintiff, rather than drawing an inference in favor of plaintiff that a contract exists [Doc. 31 p. 3]. Second, plaintiff argues that the Court drew a flawed analogy between the allegations in this case and the facts in *Angus v. City of Jackson*, 968 S.W.2d 804 (Tenn. Ct. App. 1997) [*Id.*]. Third, plaintiff asserts that the Court erred in finding that the contours of the alleged contract are uncertain [*Id.* at 4].

As to plaintiff's first argument, the Court notes that "[t]he determination of whether a contract has been formed is a question of law." *Tan v. Wilbur Smith Assocs., Inc.*, No. 2:09-CV-25, 2011 WL 3421320, at *4 (E.D. Tenn. Aug. 4, 2011) (quoting *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009)). The Court's role, therefore, is to accept all factual allegations in the complaint as true and determine whether the complaint contains enough facts to show that the existence of a contract is plausible. *See Twombly*, 550 U.S. at 570. While the Court is obligated to "draw all reasonable inferences in favor of plaintiff," the Court is not obligated to accept conclusions that are unreasonable or unsupported by sufficient allegations. *Id.*

In making the determination that there was no enforceable contract between plaintiff and defendants, the Court did not blindly accept defendants' characterization of the facts, as plaintiff argues. Instead, the Court accepted plaintiff's factual allegations as true, but determined that those facts were not legally sufficient to state a plausible claim

9

as to the existence of an enforceable contract. In making this determination, the Court did not credit defendants' version of the facts, rather, the Court determined that plaintiff's conclusory allegations that the parties had entered into a valid contract for services were not supported by plaintiff's factual allegations. The Court need only draw legal inferences in favor of a plaintiff where those inferences are reasonable taking the factual allegations as true. *See id.*; *Tan*, 2011 WL 3421320, at *4. Even though plaintiff repeatedly claims that a contract exists, the Court has no obligation to accept conclusory statements not supported by sufficient factual allegations under the *Twombly* and *Iqbal* standards.

As the Court discussed in its previous opinion, the facts set forth in plaintiff's complaint support the conclusion that defendants merely extended a preliminary invitation to submit designs [Doc. 28 pp. 8–11]. In finding that plaintiff did not sufficiently allege the existence of an enforceable contract, the Court followed the analysis set forth in *Angus v. City of Jackson* [*Id.* at 9–11]. In *Angus*, the Tennessee Court of Appeals found that the parties' history of solicitation and presentation of bids did not rise to the level of an enforceable contract. 968 S.W.2d at 808. In its previous opinion, the Court found that the gifting summit was a preliminary invitation to submit designs, and that, similar to *Angus*, such an invitation does not rise to the level of an enforceable contract [Doc. 28 p. 9].

Plaintiff argues that the analogy the Court drew between *Angus* and the instant case is flawed. In support of its argument, plaintiff points out the following differences

10

between *Angus* and this matter: (1) *Angus* was decided on summary judgment—after the court conducted a hearing, received evidence, and made factual findings; (2) the plaintiff in *Angus* had not shown that it had conferred a benefit on the defendant; and (3) the decision in *Angus* ultimately turned on an issue of statutory interpretation concerning whether there had been public notice of the bid opportunity [Doc. 31 pp. 3–4 (citing *Angus*, 968 S.W.2d at 806, 808)].

As to plaintiff's first point, the fact that the *Angus* court decided the case on summary judgment does not preclude this Court from applying those same points of law in determining whether plaintiff has sufficiently alleged the existence of a contract on a motion to dismiss. Taking plaintiff's factual allegations in the complaint as true, the Court must still apply the Tennessee contract principles to determine whether plaintiff has stated a claim. The principles set forth in *Angus* are general contract law principles and apply to the disposition of motions for summary judgment and motions to dismiss alike.

Plaintiff's second alleged distinction between *Angus* and the instant case is that the plaintiff in *Angus* had not shown that it had conferred a benefit on the defendant, while plaintiff in this matter contends that it has done so. Plaintiff's allegations, however, do not indicate that it conferred a benefit on defendants. Although plaintiff alleges that it performed trend and demographics analysis, market research, and product design services [Doc. 9 ¶ 33], because plaintiff did not attend the gifting summit, defendants did not

receive the benefit of any of these services. As such, plaintiff's second distinction is without merit.

The Court now turns to plaintiff's final attempt at distinguishing *Angus*, that is, plaintiff argues that *Angus* ultimately turned on an issue of statutory interpretation concerning whether there had been public notice of the bid opportunity. Plaintiff's characterization of the decision in *Angus*, however, is incomplete. Although *Angus* did involve statutory interpretation, the ultimate decision hinged on whether the parties' course of conduct established the existence of a contract. 968 S.W.2d at 807 (finding that the defendant "is entitled to summary judgment unless [the plaintiff] can show that there existed an implied contract" between the parties).

While the circumstances in the present case may not be identical to those in *Angus*, the points of law in *Angus* regarding whether a contract exists are still applicable because the circumstances in the cases are, at the very least, similar. The cases are similar in that, just as in *Angus*, where the existence of a contract rested on the defendant's acceptance of the plaintiff's bid for demolition projects, in the present case, the existence of a contract rests on defendants' selection of and order for certain gift package designs presented by plaintiff. *Id.* at 808.

Plaintiff's final argument in support of the existence of a contract is that the Court erred in finding that the contours of the alleged contract are uncertain [Doc. 31 p. 4]. In its previous opinion, the Court provided that it was unclear whether a breach of plaintiff's alleged contract would occur in certain circumstances [Doc. 28 p. 11]. Plaintiff argues

that this finding imposed on plaintiff a pleading requirement exceeding the scope of Rule 12(b)(6).

Plaintiff is correct that it does not need to allege the "exact terms of the parties' contractual arrangement" in order to survive a motion to dismiss. *Scott v. Bank of Am.*, No. 12-12864, 2013 WL 5353231, at *3 (E.D. Mich. May 30, 2013). Plaintiff must, however, allege a contract "of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *McKee v. Meltech, Inc.*, No. 102730, 2011 WL 1770461, at *7 (W.D. Tenn. May 9, 2011) (citing *Doe v. HCA Health Servs. of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn. 2001)) (applying this standard to a motion to dismiss). By questioning whether a breach would occur under certain circumstances, the Court questioned the basic premise of the alleged contract as it is unclear what the respective obligations of the parties are.

In posturing such questions, the Court does not intend to presuppose that the contract alleged must be bilateral in nature, as plaintiff suggests [Doc. 31 p. 5]. Instead the Court raises these questions as an example of the lack of definite and certain terms of the alleged contract—contributing to its determination that the basic premise of the contract was uncertain.

In sum, the Court finds no clear error in its application of the Rule 12(b)(6) standard in determining that plaintiff has not adequately pled the existence of an enforceable contract. Because the Court dismissed the breach of contract and fraudulent

concealment claims on the basis of that determination, the Court finds no clear error in the dismissal of those claims.

### 2. Promissory Estoppel and Promissory Fraud Claims

Plaintiff also asserts that the Court erred in dismissing plaintiff's promissory estoppel and promissory fraud claims. In its complaint, plaintiff alleged promissory estoppel and promissory fraud based on plaintiff's reliance on defendants' actions in promising that the conditions of the 2015 gifting summit would remain the same as those in past years.

The Court previously determined, however, that plaintiff did not sufficiently allege that defendants made any promise to keep the conditions the same [Doc. 28 pp. 11–14]. Plaintiff now argues that the Court erred in making this finding because it overlooked allegations in the complaint and improperly found that the course of dealing between the parties changed after the SUAVE® comb project in March 2013 [Doc. 31 pp. 5–6].

In addition to the Rule 12(b)(6) standard, plaintiff acknowledges that it must satisfy the Rule 9(b) standard for its promissory estoppel and promissory fraud claims [Doc. 37 p. 5]. Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule requires that "a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005).

14

To support its contention that the Court did not consider all the allegations in the complaint, plaintiff points to certain allegations and argues that, taken as true, the allegations show that defendants "affirmatively promised that the terms for the 2015 gifting summit would be the same as those for the past gifting summits" [Doc. 31 p. 6]. None of those allegations, however, describe any instance where defendants explicitly promised plaintiff that the conditions would remain the same as the previous gifting summits. Instead, the allegations provide that defendants asked plaintiff to perform as it had previously, that defendants were aware of the previous course of dealing, and that defendants never told plaintiff that they intended on applying a precondition to presenting at the summit.

While plaintiff alleges that defendants "promised" the conditions would remain the same, plaintiff does not provide specific factual allegations to support that contention. As such, the allegations do not rise to the standard required by Rule 9(b).

In making this finding, the Court is not requiring plaintiff to "identify a single statement by a single individual at a specific time and place," as plaintiff argues [Doc. 36 p. 4]. Instead, plaintiff needs to provide some factual allegations as to the substance of this promise for the Court to determine that defendants unambiguously promised that the conditions would remain the same. While plaintiff mentions specific dates and specific people in the complaint, none of the allegations in the complaint provide any detail on the content of any specific statements made by defendants that defendants promised to apply

15

the same terms from years past. As such, plaintiff's claims do not meet the Rule 9(b) standard.

Additionally, plaintiff argues that "the Court committed clear error when it found that the parties' course of dealing changed after the SUAVE® comb project . . . [because] the Court overlooked [plaintiff's] allegations that the conditions for the 2014 gifting summit (which occurred after the SUAVE® comb project) were identical to the conditions of the prior summits" [Doc. 31 p. 7].

The Court notes, however, that plaintiff specifically alleges that it was too late for Messuti to change the terms for the 2014 gifting summit because he only expressed the intent to change the terms shortly before the 2014 summit took place [Doc. 9 ¶ 28]. In addition, the Court addressed these allegations previously, finding that "plaintiff does not allege . . . that Messuti informed plaintiff that he accepted the terms established by the previous course of dealing" [Doc. 28 p. 13]. As the Court has already discussed, plaintiff's complaint does not contain any allegations that defendants specifically promised to continue the previous course of dealing. Rather, plaintiff's allegations in the amended complaint indicate that the alleged years of a continued course of dealing had already been broken by the dealings during the comb project.[2]

Taking all of plaintiff's allegations are true, the Court finds that plaintiff did not sufficiently allege that defendants made an explicit promise to plaintiff. Plaintiff,

---

[2] The Court also notes that it found that any alleged implied promise though the course of dealing was not "unambiguous and unenforceably vague," as required to pursue a claim for promissory estoppel [Doc. 28 p. 13].

16

therefore, fails to make a showing that the Court committed clear error with respect to the dismissal of plaintiff's promissory estoppel and promissory fraud claims.

### 3. Negligent Misrepresentation Claim

Finally, plaintiff argues that the Court erred in dismissing its negligent misrepresentation claim. Plaintiff argues that the Court "did not consider several relevant allegations, including the allegation that [defendants] told [plaintiff] that the 2015 gifting summit would be run the same way as in past year" [Doc. 31 p. 8]. As the Court previously found, however, and as further discussed herein, "plaintiff does not allege any statement in which defendants affirmatively stated their intention to run the gifting program the same way it had in years past" [Doc. 28 p. 16].

Plaintiff also argues that the Court erred when it found that defendants' "representations 'regarding the conditions for participating in a future event do not constitute a statement material past or present fact'" [Doc. 31 p. 8]. As plaintiff points out, "[r]epresentations regarding future events can still support a claim for negligent misrepresentation if the representations concern existing agreements and the representations involve a present or past fact" [Doc. 28 p. 15 (citing *Cummins v. Opryland Prods.*, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *8–10 (Tenn. Ct. App. Mar. 7, 2001))]. Plaintiff asserts that defendants' alleged "internal[] commit[ment] to changing the terms for the 2015 gifting summit" constitutes a material past or present fact [Doc. 31 pp. 8–10].

17

The Court, however, stands by its determination that this alleged internal commitment does not constitute a present fact. As the Court noted in its previous opinion, this alleged commitment constitutes a "plan, expectation, and intention" concerning the application of conditions in the future. *Henley v. Labat-Anderson, Inc.*, No. 03A01-9104-CV-126, 1991 WL 120403, at *2 (Tenn. Ct. App. July 9, 1991) (assurances to the plaintiff by the employer that the plaintiff would be hired in the future were not considered representations regarding existing facts). The Court finds, therefore, that plaintiff has not sufficiently alleged a claim for negligent misrepresentation concerning an existing agreement that involves a present or past fact. Also, as previously noted, plaintiff has failed to allege any specific misrepresentation on the part of the defendants. Consequently, plaintiff has not made a showing that the Court committed clear error with respect to the dismissal of plaintiff's negligent misrepresentation claim.

Having determined that there is no clear error here to justify reconsideration as to the dismissal of each claim,[3] the Court now turns to whether it should vacate the judgment due to manifest injustice.

## B.    Manifest Injustice

Plaintiff argues that dismissing this action would result in manifest injustice as plaintiff would be left without any other avenue to pursue a remedy.[4] Plaintiff therefore

---

[3] In arguing that the Court committed clear error, the Court notes that plaintiff largely raises the same arguments that it raised in response to defendants' motion to dismiss. Such arguments are improper under the Rule 59 standard. *See Kenneth Henes Special Projects Procurement*, 86 F. Supp. 2d at 726.

asks the Court to vacate the judgment and to provide leave for plaintiff to amend its complaint.

While there is no general definition of manifest injustice, "a showing of manifest injustice requires there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not line with applicable policy." *Gilley v. Eli Lilly & Co.*, No. 3:10-CV-251, 2014 WL 619583, at *3 (E.D. Tenn. Feb. 18, 2014). As a general matter, "public policy favor[s] finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (discussing in the context of Rule 60). The Sixth Circuit has provided that manifest injustice does not include a party attempting "to correct what has—in hindsight—turned out to be poor strategic decision." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999); *see also Oaks v. Allstate Ins. Co.,* No. 05–191, 2007 WL 38375, at *5 (E.D. Ky. Jan. 5, 2007) ("Rule 59(e) is not a second opportunity for Plaintiff to correct his oversights and retool his case."). In a

---

[4] The Court notes that plaintiff does not argue that it is moving the Court to vacate the judgment for manifest injustice until its reply brief [Doc. 36] in support of its motion [Doc. 30]. Furthermore, plaintiff does not provide any argument to support a theory of manifest injustice until it filed its reply brief [Doc. 37] in support of its motion to amend [Doc. 32]. "It is well settled that a movant cannot raise new issues for the first time in a reply brief." *Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*, No. 3:11-CV-608, 2012 WL 1108125, at *7 (E.D. Tenn. Apr. 2, 2012); *see also Scottsdale Ins. Co. v. Flowers*, 513 F. 3d 546, 553 (6th Cir. 2008) (noting that a party waives an issue raised for the first time in a reply brief or motion for reconsideration). Additionally, the Local Rules of this District provide that reply briefs are not necessary and advise that "[a] reply brief shall . . . directly reply to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1(c). Although this alone provides a basis for the Court to decline to address the argument, the Court addresses the merits of the argument as well.

situation where a plaintiff could have sought to amend its complaint before judgment was entered, but chose not to, there would be no manifest injustice in dismissal of that complaint. *See Energy Conversion Devices Liquidation Tr. v. Trina Solar Limited*, No. 13-14241, 2015 WL 5216579, at *5 (E.D. Mich. Sept. 4, 2015) (finding that there would be no manifest injustice if the plaintiff "were capable of pleading similar allegations . . . before judgment was entered but chose not to file a Rule 15 motion to amend").

Here, plaintiff has not provided any evidence that it was unable to plead similar allegations to those in its amended complaint before the Court dismissed the action.[5] Plaintiff argues that "it could not have known the Court's concerns about the sufficiency of its pleading until the Order on February 17, 2016," and for that reason, it did not move to amend its pleading previously [Doc. 37 p. 3]. The Court notes, however, that defendant raised in its motion to dismiss the same, or at least very similar, concerns that the Court addressed in its February 17, 2016, Memorandum Opinion and Order. Plaintiff could have sought to amend its complaint concurrently with its opposition to defendant's motion to dismiss. Instead, plaintiff now asks the Court to vacate its judgment and allow plaintiff to amend its complaint.

As plaintiff's amended complaint does not contain any allegations that it could not have raised previously, plaintiff is improperly using a Rule 59(e) motion to raise arguments that "could have, but [were] not" raised before. Sault Ste. Marie Tribe of Chippewa Indians, 86 F. Supp. 2d at 726. Vacating the judgment and providing plaintiff

---

[5] The Court declines to make a finding as to whether plaintiff's amended complaint contains sufficient allegations to satisfy the standards under Rule 12(b)(6).

with the opportunity to amend its complaint would be contrary to policy promoting the finality of judgments and would impermissibly provide plaintiff "with an opportunity for a second bite at the apple." *Beltowski*, 2009 WL 5205368, at *4.

Plaintiff cites to this Court's decision in *Polzin v. Barna and Co.*, No. 3:07-CV-127, 2007 WL 4365760 (E.D. Tenn. Dec. 11, 2007), to support its contention that having no other avenue to pursue a remedy supports finding manifest injustice. In that case, this Court determined that there was no manifest injustice in part because the plaintiff had thirty-seven other causes of action available in state court. *Id.* at *3. Although having an alternative remedy supports a finding that there is no manifest injustice, having no available remedy does not mandate finding that there is manifest injustice when plaintiff has the ability to amend its complaint previously and chose not to. *See Energy Conversion Devices Liquidation Tr.*, 2015 WL 5216579, at *5. Plaintiff cannot rely on manifest injustice "to correct what has—in hindsight—turned out to be poor strategic decision." *GenCorp, Inc.,* 178 F.3d at 834.

In sum, the Court finds that plaintiff has not made a sufficient showing of manifest injustice, particularly because plaintiff had the opportunity to amend its complaint at a previous juncture and chose not to. Consequently, as the Court has already found no clear error and plaintiff has not indicated that there is any newly discovered evidence, or an intervening change in controlling law, the Court will deny plaintiff's Rule 59(e) motion.

## III. Motion for Leave to Amend Pleadings

The Sixth Circuit has provided that "[a]mendments after judgment should only be allowed if the standards under Rule 59(e) or 60(b) are met." *Russell v. GTE Gov't Sys. Corp.*, 141 Fed. Appx. 429, 436 (6th Cir. 2005). As the Court has determined that plaintiff had not met such standards, the Court will deny plaintiff's motion to amend the pleadings as moot.

## IV. Defendants' Request for Attorney's Fees

In their response to plaintiff's Rule 59(e) motion, defendants state "to the extent that the Court finds [plaintiff's] Motion frivolous, [defendants] respectfully request that the Court award [them their] attorneys' fees in responding to [plaintiff's] Motion and/or provide [them] with an opportunity to submit further briefing on this issue" [Doc. 34 p. 14]. Defendants do not specify under what rule they are asking for sanctions, but the Court construes this request as a motion for sanctions under Federal Rule of Civil Procedure 11.

Rule 11 prohibits attorneys from filing pleadings and motions "unless 'to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.'" *Salkil v. Mt. Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006) (quoting Fed. R. Civ. P. 11(b)). In all Rule 11 motions, the test for whether sanctions are warranted is whether the conduct for

22

which sanctions are sought "was 'reasonable under the circumstances.'" *Id.* (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)). Rule 11 further requires that "[a] motion for sanctions [] be made separately from any other motion and must describe the specific conduct that violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

First, the Court notes that by making a one-sentence request for sanctions in the conclusion section of their response to the Rule 59(e) motion, defendants have not complied with Rule 11(c)(2). While defendants contend that plaintiff "fail[ed] to comply with the controlling law in this Circuit governing motions for reconsideration," defendants provide no basis for the conclusion that the alleged failure rises to the level of warranting sanctions [Doc. 34 pp. 14–15]. Consequently, the Court concludes that defendants have not shown that plaintiff's actions were frivolous, done for improper purpose, or otherwise unreasonable so as to warrant relief under Rule 11.

In addition to the request for sanctions, defendants ask for an opportunity to submit further briefing on this issue. Although the Court finds plaintiff's arguments under Rule 59(e) are insufficient to warrant the relief requested, it does not appear from the information available to the Court at this time, that they are frivolous. The Court will, however, allow defendants the opportunity to submit briefing on this issue. In its reply brief, plaintiff requests that the Court defer briefing on this issue until after plaintiff has appealed the underlying judgment. The Court will grant this request. Should defendants still wish to pursue attorneys' fees, defendants may file a motion upon completion of the appeal.

## V.     Conclusion

For the reasons discussed herein, the Court hereby **DENIES** plaintiff's Motion to Alter or Amend Judgment [Doc. 30], and **DENIES as moot** plaintiff's Motion for Leave to Amend Pleadings [Doc. 32].   Should defendants wish to pursue attorneys' fees in conjunction with the Rule 59(e) motion, defendants may file a motion upon completion of the appeal.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

24